Heather S. Orr, Esq., SBN 239449
HSO Law – Beverly Hills Office
433 N. Camden Dr., Suite 600
Beverly Hills, CA 90210
(424) 234-9409

Attorney for Defendant
The Lux Group, Inc.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| VINCENT K. TYLOR,<br><br>Plaintiff,<br>v.<br><br>JOEL LIEBKE aka JOE LIEBKE doing business as LUXPADS; THE LUX GROUP, INC.; and DOES 1-10,<br><br>Defendants. | Case No. 2:16-cv-1660 (PJWx)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO SET ASIDE DEFAULT**<br><br>Date: August 22, 2016<br>Time: 1:30pm<br>Dept.: Courtroom 880<br><br>Filed: April 18, 2016<br>Trial Date: None set yet |

## INTRODUCTION

The fact that this motion was necessary is absurd. The parties' respective counsel had conflicting interpretations of the plain language of a code section regarding service (a mere 10-day difference), and Plaintiff's counsel took advantage of the alleged misreading of a statute (which Defendants still contend is not a misreading) to rush to default, hoping never to have to try the merits of this case.

"Where timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits. Schwab v. Bullock's Inc., 508 F.2d 353, 355 (9th Cir. 1974).

There is a reason Plaintiff does not want to try this case on the merits. Plaintiff's photographs are placed online on multiple "FREE DOWNLOAD" websites. (See Declaration of Heather S. Orr, "Orr Dec." Exhibit A.) When unsuspecting web-developers download and utilize said photographs, Plaintiff sues the owners of the websites for tens of thousands of dollars, even if the alleged infringing party *immediately* removed the photographs that were unknowingly posted to their website by an often foreign web developer that failed to read the fine print about the "FREE DOWNLOAD." (The fine print says that the "FREE DOWNLOAD" only applies to use of the photographs as computer wallpaper.)[1]

Plaintiff has sued dozens, possibly hundreds of website owners world-wide (and shaken down hundreds more), who alleged to have downloaded the photographs offered for "FREE DOWNLOAD." **It is a honeypot scheme by Plaintiff to induce unsophisticated parties into violating his own copyright so that he can sue them for thousands of dollars**. There are entire websites dedicated to uncovering Plaintiff's scheme and supporting other people who fall victim to it.

---

[1] Plaintiff claims that the FREE DOWNLAOD websites post his photographs without his authorization or instruction but notably, there's a dearth of lawsuits against those websites and an abundance of lawsuits against those who download the photos.

Defendant has evidence of all of the above and had drafted both an answer and a cross-claim under California's Unfair Business Practices. Further, Defendants' counsel communicated to Plaintiff the following, in *multiple* conversations that took place over several months:

1. Plaintiff has not even named the owner of the website in this lawsuit. Neither named defendant has any ownership interest in the website in question and the named Defendants could easily dispose of the entire case on summary judgment.

2. Plaintiff appears to be throwing darts at entities with "Lux" in the name, despite the fact that the different "Lux" companies offer completely different services. He refuses to name the correct company (because he is aware that may soon be insolvent) and also names Mr. Liebke individually without even bothering to attempt to pierce the corporate veil. He just named an individual who may have an ownership interest in the companies at issue, without telling us why an owner is liable for the actions of the company. The naming of Mr. Liebke is a sham that doesn't even *pretend* to have merit.

3. At most, the *correct* defendants (none of whom are actually named) should owe three license fees for the photos at issue, which would total approximately **$3600**, according to *Plaintiff's own website* setting forth license prices. Plaintiff has inexplicably demanded **$28,200.**

4. The $3600 would be offset by damages awarded as a result of Defendants "honeypot" scheme, which violates California Business Practices Section 17200.

(See Exhibit B to Orr Dec.)

To make matters worse, and likely because Plaintiff's counsel knew that his lacked merit and that he faced a cross-claim, he intentionally filed for default early, despite Defense counsel's clear communication that Plaintiff's counsel had miscalculated the due date. To add insult to injury, Defense counsel made multiple earnest requests that Plaintiff's counsel cite the statutory basis for his service so that she could verify the due date and Plaintiff's counsel ignored her until a month *after* default was entered, only then citing a 3rd

Circuit case interpreting an entirely different code section of a different state with *different* service requirements. (*See* Orr Dec. Exhibit C.)

The code section is clear with regard to the date on which Defendants' answer was due. There is no case law that disturbs the reality that Defendants did not default. However, even *if* there were binding case law, Defense counsel's reading of the law – which clearly and unequivocally effectuates service on the 10th day after mailing – would at *worst* be a mistake or excusable neglect. Indeed, it would be the very essence of excusable neglect.

<u>Courts have an interest in deciding cases on the merits</u>. "Default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986).

Plaintiff's tactics are the most offensive type of gamesmanship, meant to increase Defendants' expense and keep the Court from getting to the merits of this matter when there sits a party ready and willing to defend in this action.

**SUMMARY OF SERVICE**

By admission of his own Proof of Service, Plaintiff served its First Amended Complaint under California's *substitute* service rules (personal delivery at a usual place of business + U.S. Mail) under *California Code of Civil Procedure* § 415.20. The mailing occurred on May 12, 2016 and, according to *California Code of Civil Procedure* § 415.20, service in this manner is only ***"deemed complete on the 10th day after the mailing."*** Notwithstanding the clear language of this statute, Plaintiff treated the day of mailing as the service date and thus requested default to be entered against Defendants before their answers were due.

Prior to filing for entry of default, Plaintiff reached out to Defendant and communicated that he intended to file for entry of default. Plaintiff immediately responded – a mere 20 minutes later - and cited the above code section, highlighting that Plaintiff's counsel had miscalculated the dates. She specifically asked Plaintiff's counsel to cite his basis for ignoring the 10-day extension under the very code section under which he served

Defendants. **Plaintiff's counsel ignored her meet and confer attempts – despite the fact that they were immediate – and instead proceeded to wrongly file for default.**

## ARGUMENT

### I. THE ONE CASE CITED BY PLAINTIFF IN SUPPORT OF HIS REWRITING OF CALIFORNIA CODE IS NOT CONTROLLING LAW AND DOES NOT ADDRESS, CITE OR DISCUSS THE ACTUAL CODE SECTION AT ISSUE.

Plaintiff cites one case and one case only for the proposition that Defendants defaulted: Beller & Keller v. Tyler, Case 2:16-cv-01660-PSG-PJW.

First, *Beller* interpreted a New York statute and is not controlling law – or even informative law – with regard to how to interpret an unrelated California code section. Second, the service statutes at issue have a significant meaningful difference. CPLR § 308(4) allows for service via "nail and mail," not substituted service, the key difference that under CPLR § 308(4), a complaint must be "nailed" at a person's home or *actual* place of business. Such a complaint is much more likely to be discovered than a document left at a business mailbox that is not visited frequently (allowable under California's substituted service and indeed the method of service employed herein).

This distinction is not meaningless. The California code section takes into account the fact that if one can be served at a mere business mailbox, rather than a home or actual place of business (as required by the New York law in *Beller*) they need extra time to respond, given that most people don't drive to their offsite mailbox daily. Thus, *Beller* cannot be read to change California service requirements when it does not even deal with similar service requirements.

Finally, *Beller* involved a default judgment, not mere entry of default. "[T]he standards for setting aside entry of default under Rule 55(c) are less rigorous that those for setting aside a default judgment.") 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2696, at 142 (3d ed.1998).

*Beller* must be disregarded completely. The plain language of the California code must control.

## II. THE CASELAW – **ESPECIALLY** THOSE CITED BY PLAINTIFF – HIGHLIGHT THAT, AT WORST, DEFENDANT'S INTERPRETATION CONSTITUTES EXCUSABLE NEGLECT

Plaintiff's cited cases do nothing but help Defendants. Plaintiff cites Trs. Of the S. Cal. IBEW-NECA Pension Plan v. Sabco Electrique, Inc., No. CV 07-7894, 2008 U.S. Dist. LEXIS 110464, at *10-11 (C.D. Cal. Sept 15, 2008), quoting, "A defendant's conduct will be considered culpable "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond."

There could not be a case further from "devious, deliberate, willful or bad faith" than the case at hand! At *worst*, even if the Court accepted that the 10-day extension included in the plain language addressing substituted service was inapplicable, such would absolutely constitute a mistake or excusable neglect. Defense counsel had calendared the case in accordance with the *actual* plain language of the rule upon which service was effectuated and *immediately* communicated that to Defense counsel, who *refused* to respond, filed for default anyway, and refused cite his basis for doing so for an entire *month*, and long after this motion was filed.

Plaintiff claims that it is "unreasonable for Defendants to have relied on a contrived rule of law completely unsupported by any legal precedent." (Opposition 11:11-14.) One doesn't need precedent to interpret plain language! Plaintiff *admittedly* served the complaint under Fed.R.Civ.P. Rule 4(e)(1):

> (1) **following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made**;

Permissible service under California law includes personal service (*Code of Civil Procedure* § 415.10) or substituted service (*Code of Civil Procedure* § 415.20) whereby a summons and complaint may be left at a person's usual mailing address, followed by a mailed copy. *Code of Civil Procedure* § 415.20 reads as follows –

> (b) If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in Section 416.60, 416.70, 416.80, or 416.90, a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. **Service of a summons in this manner is deemed complete on the 10th day after the mailing.**

(emphasis added).

The cases Plaintiff cites also have one thing in common: a final judgment. There is no final judgment in the case at hand; there is only an improperly entered default. Again, "the standards for setting aside entry of default under Rule 55(c) are less rigorous that those for setting aside a default judgment.") 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2696, at 142 (3d ed.1998).

Defense counsel goes so far as to suggest that because Plaintiff's counsel admitted to verifying the due day with multiple other attorneys in advance of Defendant's entry of default, that this action was *all* that Defense counsel did to verify the due date. (Opposition, 13:12-13). Nonsense. Defense counsel researched this issue multiple times and found no 9th Circuit cases that eliminated the 10-day extension granted by the CCP for substituted service and yes, *then* ran that by trusted colleagues to ensure that she was not missing anything. (Orr Dec. ¶ 7.)

## III. PLAINTIFF WILL SUFFER ABSOLUTLEY NO PREJUDICE AS A RESULT OF GRANTING RELIEF FROM DEFAULT.

Plaintiff sent the original demand letter on May 28, 2015. (*See* Exhibit D to Orr Dec.) Then, he waited **10 months** to file this action (on March 10, 2016) and waited another two months to serve it on May 12, 2016. Any delay in getting relief is indisputably his own doing. For Plaintiff to claim prejudice because he was going to have to wait 10 more days, after having waited ***a year*** to initiate the case, is akin to a child killing their parents and then crying orphan.

Further, in an attempted misrepresentation to the Court, Plaintiff claims that he seeks injunctive relief by implying that the photographs at issue are still up (and that this creates prejudice). It is not true. All images were removed upon receipt of Plaintiff's demand letter on May 28, 2015. Plaintiff cites no evidence – nor provides any argument - that the photographs are still up but tries to analogize the facts of this case to those where injunctive relief was necessary because the photographs were still up. It's an intentional attempt to mislead the court.

Had Plaintiff just allowed Defendants to file an answer – on the actual due date as was their stated intention – the merits of this case would have been at issue much sooner.

There is no prejudice to Plaintiff whatsoever. He knew answers were forthcoming and the difference in dates was only 10 days. And he had already chosen to wait a year.

## III. PLAINTIFF'S COUNSELS EGREGIOUS BEHAVIOR WARRANTS SANCTIONS

First, the case itself is a sham in which Plaintiff entices people to violate his copyright so that he can sue them for a multiple of what the license would actually cost, resulting in hundreds of lawsuits and even more payouts from threatened lawsuits. Second, Plaintiff has demanded $28,000 for a violation that, at *most*, should be less than $3,600, according to Plaintiff's *own* license fee schedule. Third, the photographs were taken down immediately upon notice, having only been up for 3 months. Fourth, Plaintiff attempted to

shake down Defendant for the $28,000 for a *year* before actually filing this case, creating his own delay. Fifth, Plaintiff knowingly sued the wrong parties after having been told multiple times that the named parties had no interest in the website at issue. Sixth, Plaintiff didn't even bother to make allegations to support piercing the corporate veil with regard to Mr. Liebke, (and thus including him solely as a shake down tactic with clearly no intent to proceed against him). Seventh, Plaintiff's counsel ignored the plain language of the statute under which he served Defendants. Eighth, he did this despite being told in advance that his calculation was incorrect and that Defendants *were* going to answer in less than 10 days. Ninth, he refused to meet and confer about the service issue *or* granting relief from default, waiting over a month to cite one New York case interpreting a different and unrelated code section as a basis for his early default filing. Tenth, Plaintiff's counsel mislead this court by implying that the photos were still up and that he needed injunctive relief (in an effort to create prejudice where none existed). Many of these alone are sanctionable. Together, they approach unconscionability.

Plaintiff's counsel defied every requirement to meet and confer in good faith (with regard to both the service deadline and granting relief from default); he intentionally undermined the Court's interest in hearing the merits of a case; and he caused both parties and the Court to waste their time on this motion despite the complete lack of merit to its opposition. There has seldom been a more appropriate basis for a grant of sanctions.

## CONCLUSION

Courts have an interest in ruling on the merits of a case, rather than rewarding the parties who attempt to (mis)use the rules to skirt around their obligation to prove their own case. This is not a game where the person most able to bend the procedural rules wins. Plaintiff's case in chief has no merit. Defendants absolutely deserve their day in court to prove that (1) they're not even the proper defendants, (2) the photo was immediately removed by the entity that is the proper defendant, (3) the damages at stake are less than

$4,000 and (5) Plaintiff is liable for his honeypot scheme to a tune much greater than $4,000.

Defendants do not lose that right merely because a lawyer found one New York case interpreting an unrelated statute and argued that it somehow erased a sentence from a California statute.

DATED: Monday, August 08, 2016. HSO LAW – Beverly Hills Office

/s/ Heather Orr
Heather S. Orr, Esq.
Attorney for Defendants
Joel Liebke aka Joe Liebke, and
The Lux Group, Inc.

**DECLARATION OF HEATHER S. ORR, ESQ.**

I, Heather S. Orr, declare as follows:

1. I am not a party to the present action. I am over the age of eighteen. I have personal knowledge of the facts contained within the following paragraphs, and declare them to be true and correct and could and would competently testify thereto if called as a witness in a court of law.

2. I am the attorney of record for both Defendants in the above-captioned case.

3. This declaration is being submitted in support of Defendants' Reply to Opposition to Motion to Set Aside Default.

4. Exhibit A is a true and correct copy of one of Plaintiff's photographs at issue in this case being offered for free download online.

5. Exhibit B is a true and correct copy of correspondence I sent to Plaintiff's counsel informing him that he had named the wrong parties and that his case lacked merit. Specifically, I followed-up and sought his basis for filing for default early, cited the applicable law, and asked him to respond. <u>Mr. Gafni never responded to the email dated June 3, 2016 and instead filed for entry of default.</u>

6. Exhibit C is a true and correct copy of correspondence sent by Mr. Gafni an *entire month* after I first asked for the basis of his early default filing. This is the first time Mr. Gafni communicated to me that his default filing was based on New York case law involving a different service code section. Prior to this email, for the entire month subsequent to Mr. Gafni's premature filing for entry of default, I had no idea how he calculated the alleged due date upon which his default filing was based.

7. In my attempts to understand Plaintiff's reading of the service statute, I researched service under California's Substituted Service statute multiple times and found no 9th Circuit cases that eliminated the 10-day extension granted by the CCP

for substituted service. Only *then*, did I run that by trusted colleagues to ensure that I was not missing anything.

8. Attached hereto as Exhibit D is a true and correct copy of the original demand letter served on my client in this matter.

SWORN TO UNDER PENALTY OF PERJURY of the laws of the United States and the State of California on this 8th day of August 2016 in San Diego, California.

By: Heather S. Orr

Heather S. Orr, Esq.
Attorney for Defendants
E-mail: heather@hsolaw.com

# EXHIBIT A

Kona Coast Big Island Hawaii House Moss Sea Palms Wallpaper Pictures HD - 1920x1080px



Start Download (Free)
Send and Share Zip & Rar Files Get Archive Manager!

# EXHIBIT B

Gmail by Google

Heather Orr <heather.orr@hsolaw.com>

# Vincent K. Tylor v. Joel Liebke aka Joe Liebke dba Luxpads

**Heather Orr** <heather.orr@hsolaw.com> Wed, Mar 23, 2016 at 7:36 AM
To: Melissa Wilson <Admin@gafnilaw.com>
Cc: Adam Gafni <adam@gafnilaw.com>

He is improperly named as an individual, not the corporation that owns and runs the website. I am not yet authorized to accept service on him as an individual.

You really should reconsider your decision to name him as an individual unless you have *any* evidence that you can pierce the corporate shield (and you do not). You're clearly just trying to bully him into writing you a check rather than intending to actually proceed against him (I'd get this thrown out and you know that).

I don't take kindly to shake downs and your decision to name him instead of the corporation confirms that that's all this is. Name the right party.

Heather S. Orr, Esq.
(424) 234-9409
Fax: (424) 232-8474
www.hsolaw.com

HSO Law - Beverly Hills Office
433 N. Camden Dr. Suite 600
Beverly Hills, CA 90210

HSO Law - San Diego Office
8885 Rio San Diego Dr. Suite 237
San Diego, CA 92108

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from HSO Law, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product.
Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.
[Quoted text hidden]

Gmail by Google

Heather Orr <heather.orr@hsolaw.com>

# Vincent K. Tylor v. Joel Liebke aka Joe Liebke dba Luxpads

**Heather Orr** <heather.orr@hsolaw.com> Wed, Mar 23, 2016 at 10:37 AM
To: Adam Gafni <adam@gafnilaw.com>
Cc: Melissa Wilson <Admin@gafnilaw.com>

I'm traveling for work right now so I can't respond to everything or take a cal.

But the DRE is wholly irrelevant. The company is a rental company (as is obvious from the website), not selling real estate. If he has a real estate license, it's for work unrelated to Luxpads. (I think he formerly sold real estate - maybe he still does - but it's not related to Luxpads, the luxury rental company).

Also, I'm sure you looked this up, but Luxpads is not a DBA, it's an entity. Your failure to list them - and your tenuous argument that his real estate license somehow permits you to sue him individually - tells me that you're not interested in suing the correct party but are just trying to scare him into writing a check that he, as an individual, is most certainly not liable for.

I don't have to give you free discovery - especially on a case that I consider to be utterly without merit. You know you're naming the incorrect party and you're doing so because I previously communicated the financial status of the entity. I see through these tactics and so will a judge. The corporate veil will withstand your paltry "but he individually has an (unrelated) real estate license" argument.

Running a corporation "as an individual" does not mean it's not a corporation. Corporations owned by a single individual are still entitled to the corporate veil.

Registering the site in his name also is not conclusive evidence that it is owned by him as an individual. Many people initially register a site to their name prior to forming their entity - in fact almost everyone reserves their site before they file for corporate status to ensure the site doesn't get snatched up while they await state approval of a corporation! But you know this.

If you proceed I will bring an MSJ and when I prevail (because you lack evidence to sue him as an individual), I will bring a malicious prosecution action.

Heather S. Orr, Esq.
(424) 234-9409
Fax: (424) 232-8474
www.hsolaw.com

HSO Law - Beverly Hills Office
433 N. Camden Dr. Suite 600
Beverly Hills, CA 90210

HSO Law - San Diego Office
8885 Rio San Diego Dr. Suite 237
San Diego, CA 92108

[Quoted text hidden]

Heather Orr <heather.orr@hsolaw.com>

# Vincent K. Tylor v. Joel Liebke aka Joe Liebke dba Luxpads

**Heather Orr** <heather.orr@hsolaw.com> Fri, May 27, 2016 at 1:12 PM
To: Adam Gafni <adam@gafnilaw.com>
Bcc: Joe Liebke <joe@liebke.com>

Adam,

There is not going to be a settlement in this matter. He is actively looking for other victims of this scam to bring a counterclaim.

Further, you still have the wrong party named despite being put on notice of this defect. Luxpads is not a DBA for Joe Liebke. I have no idea where you came up with the idea that it's his personal DBA - do you have documentation that he filed for a DBA? Given that Luxpads is an entity, I find it highly unlikely that there are any DBA filings for Mr. Liebke.

Luxpads owns the website at issue here, not Joe Liebke.

Further, your service attempt not only fails to even come *close* to meeting the requirements of Rule 4 in that you mailed it, but you actually mailed the complaint *to the company address*, which of course is more evidence that you know the company is the proper party, not Mr. Liebke. Regardless, you cannot serve an individual by mailing a summons to an address of *another entity!*

All of the above - in an addition to your quick and repeated demands for settlement (even after I've been clear multiple times that there will be *no* settlement), confirms that this is a shakedown. I know it, you know it, and if you thought you had a real case you would probably make some meager attempt to comply with applicable pleading requirements and procedural requirements.

If you *do* ever affect service, I will file a motion to dismiss on the grounds that you cannot pierce the corporate shield merely by alleging the existence of a DBA for which you have no evidence. If you've ever attempted to pierce the corporate shield, it requires significantly more than a paltry, unfounded, undocumented allegation that a person is using a DBA. And I'm going to seek sanctions because I've put you on notice of this fact and you continue to proceed knowingly with the wrong party.

Even if you did name the right party and serve them properly, there would be no forthcoming settlement offer. There would be a counterclaim for the unfair business practices and fraud perpetuated by your "client," and a malicious prosecution case against you and your client when we win. On principle alone he's not going to offer you a penny. Not now, not in 6 months, not in a year. I would love to file a cross-claim in this matter and bring to light these ridiculous and patently unfair business practices.

I've never lied to you when I said that you're throwing good money after bad.

Heather S. Orr, Esq.
(424) 234-9409
Fax: (424) 232-8474
www.hsolaw.com

HSO Law - Beverly Hills Office
433 N. Camden Dr. Suite 600
Beverly Hills, CA 90210

HSO Law - San Diego Office
8885 Rio San Diego Dr. Suite 237
San Diego, CA 92108

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from HSO Law, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product.
Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

[Quoted text hidden]

Gmail by Google

Heather Orr <heather.orr@hsolaw.com>

# Vincent K. Tylor v. Joel Liebke aka Joe Liebke dba Luxpads

**Heather Orr** <heather.orr@hsolaw.com> Thu, Jun 2, 2016 at 6:07 PM
To: Adam Gafni <adam@gafnilaw.com>

When you serve via substituted service, as you purportedly did (though service was STILL ineffective for Mr. Liebke as an individual), the time for service is effectuated TEN DAYS from the date of mailing. Thus, we have until the 12th to respond.

By all means, feel free to share your calculation but I'm fairly certain you forgot the 10 days.

Also, you still haven't named one liable person or entity. But you know this.

If you want to have a fight about service, by all means attempt to get entry of default. Or you can wait until the deadline actually arrives.

Heather S. Orr, Esq.
(424) 234-9409
Fax: (424) 232-8474
www.hsolaw.com

HSO Law - Beverly Hills Office
433 N. Camden Dr. Suite 600
Beverly Hills, CA 90210

HSO Law - San Diego Office
8885 Rio San Diego Dr. Suite 237
San Diego, CA 92108

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from HSO Law, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product.
Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.
[Quoted text hidden]

Heather Orr <heather.orr@hsolaw.com>

# Vincent K. Tylor v. Joel Liebke aka Joe Liebke dba Luxpads

**Heather Orr** <heather.orr@hsolaw.com> Fri, Jun 3, 2016 at 10:34 AM
To: Adam Gafni <adam@gafnilaw.com>

Because you have not responded, I'm taking the liberty to cut and paste the rule below. According to your own proofs of service, the complaint was allegedly "served" by substituted service, governed by 415.20:

(b) If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in Section 416.60, 416.70, 416.80, or 416.90, a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. **Service of a summons in this manner is deemed complete on the 10th day after the mailing.**

Please confirm that you will not wrongly move for entry of default today. I *will* seek sanctions if I have to oppose it, and I will attach our email correspondence, whereby you ignored us and demonstrated a willful refusal to follow the CCP.

Heather S. Orr, Esq.
(424) 234-9409
Fax: (424) 232-8474
www.hsolaw.com

HSO Law - Beverly Hills Office
433 N. Camden Dr. Suite 600
Beverly Hills, CA 90210

HSO Law - San Diego Office
8885 Rio San Diego Dr. Suite 237
San Diego, CA 92108

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from HSO Law, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product.
Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use

of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

[Quoted text hidden]

# EXHIBIT C

Gmail by Google

Heather Orr <heather.orr@hsolaw.com>

# Tylor v. Joe Liebke - Mandatory Meet and Confer

**Adam Gafni** <adam@gafnilaw.com> Wed, Jul 13, 2016 at 1:15 PM
To: Heather Orr <heather.orr@hsolaw.com>

Heather,

Apart from notice of the proceedings through our pre-suit communications and sending the request for waiver of service, FRCP 4(h(1)(A) allows for service in any manner as an individual and 4(e)(1) allows for service following state law. Here, the primary method of service was substitute service (CCP section 415.20(a). Also Rule 4 is flexible so long as a party receives notice which it did. California Courts have routinely upheld service upon the receptionist as proper. *Ludka v. Memory Magnetics International,* 25 Cal. App. 3d 316, 321 (Cal. Ct. App. 1972).

However, I understand that it is not the validity of service that you question, but the responsive pleading date. The Federal Rules provide for 21 days for responsive pleading. Rule 12(a)(1)(A). The additional time granted by section 415.20 in a *state court action* does not apply in federal cases in which the Federal Rules govern. *Beller & Keller v. Tyler,* 120 F.3d 21 at pp.25-26 (2nd Cir. 1997)(" We hold that HN8 under the plain terms of

Federal Rule of Civil Procedure 12(a), a defendant has twenty days from receipt of the summons to file an answer unless a federal statute provides otherwise. This is so even if, as permitted by Federal Rule of Civil Procedure 4(e), the defendant is served pursuant to a state law method of service and the state law provides a longer time in which to answer.); *Farb v. Perez-Riera*, 293 F.R.D. 77 (2013)(citing same).

Thanks,

Adam

Adam I. Gafni

**Law Offices of Adam I. Gafni**

2811 Wilshire Blvd. Suite 780

Santa Monica, California 90403

Tel: (424) 744 – 8344

Fax: (424) 488 - 1344

E-mail: adam@gafnilaw.com

Website: www.gafnilaw.com

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of the message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this message in error, please immediately delete the message and notify the author by email or telephone at (424) 744 – 8344.

**From:** Heather Orr [mailto:heather.orr@hsolaw.com]
**Sent:** Tuesday, July 12, 2016 12:27 PM
**To:** Adam Gafni <adam@gafnilaw.com>
**Subject:** Re: Tylor v. Joe Liebke - Mandatory Meet and Confer

Can you please cite the code section (state or federal) upon which your service is based? If you will grant me that, I will be happy to have a phone call. But I'd like to have the citation in advance so that I can verify/research it.

Heather S. Orr, Esq.

(424) 234-9409

Fax: (424) 232-8474

www.hsolaw.com

HSO Law - Beverly Hills Office

433 N. Camden Dr. Suite 600

Beverly Hills, CA 90210

HSO Law - San Diego Office

8885 Rio San Diego Dr. Suite 237

San Diego, CA 92108

[Quoted text hidden]

[Quoted text hidden]

> [Quoted text hidden]
>
> [Quoted text hidden]
>
> [Quoted text hidden]
>
> [Quoted text hidden]
>
> [Quoted text hidden]

# EXHIBIT D

WGC WOOLF GAFNI & CIRLIN LLP

Adam I. Gafni
Woolf Gafni & Cirlin LLP 10850
Wilshire Boulevard,
Suite 510
Los Angeles, California
90024
310-474-8776
*adam.gafni@wgclawyers.com*

May 28, 2015

**VIA U.S. MAIL & EMAIL**

**Joel Liebke dba The Lux Group**
8200 Wilshire Blvd. Suite 200
Beverly Hills, CA 90211

**Joel Liebke dba The Lux Group**
8200 Wilshire Blvd. Suite 515
Beverly Hills, CA 90211

joel@liebke.com

Re: *Vincent K. Tylor v. Joel Liebke dba The Lux Group*
*United States District Court Case No.: Not Yet Filed*

**NOTICE OF INFRINGEMENT AND DEMAND TO CEASE AND DESIST**

Dear Joel Liebke dba The Lux Group:

Please be advised that my office represents Vincent K. Tylor in connection with his claims for copyright infringement against Joel Liebke dba The Lux Group dba www.luxpads.com (hereinafter collectively "Lux Group"). If you have counsel, please immediately forward this correspondence to your attorney and provide your attorney's contact information to me.

Mr. Tylor is a renowned photographer specializing in Hawaiian landscapes. Mr. Tylor operates the website www.hawaiianphotos.net and regularly sells his copyrighted images across the United States, including in Hawaii and California. Mr. Tylor's photographs are copyrighted images, and Mr. Tylor works vigorously through sending thousands of DMCA notices as well as cease and desist letters to protect his copyrighted images (http://www.hawaiianphotos.net/VincentTylorcopyright.htm).

Recently, it has come to our attention that Lux Group has improperly displayed and used three (3) of our client's copyrighted images commercially and without authorization on your website http://www.luxpads.com.

Specifically, the images you are improperly using (depicted on the following pages) are Kee Beach Web Web-LG.jpg, registered with the U.S. Copyright Office as VA0001696555-O-23; Waikiki From Top of Diamondhead Web-LG.jpg, registered with the U.S. Copyright Office

as VA0001696555-O-08; and Kona Coast Web-LG.jpg, registered with the U.S. Copyright Office as VA0001696555-B-12.

**U.S. Copyright Registration No. VA0001696555-K-08; Kee Beach Web Web-LG.jpg**



**U.S. Copyright Registration No. VA0001696555-O-08; Waikiki From Top of Diamondhead Web-LG.jpg**



**U.S. Copyright Registration No. VA0001696555-B-12; Kona Coast Web-LG.jpg**



These copyrighted images impermissibly appear commercially on your webpage, without authorization as follows:

http://www.luxpads.com/rentals/searchbuckets/kauai-villas-beverly-hills-california-3/




http://www.luxpads.com/img.php?src=http://dx577khz83dc.cloudfront.net/5573/4bbc2967-ea6a-4008-90aa-7a23e79599e5.jpg&w=816&h=600&q=75&zc=2



http://www.luxpads.com/rentals/searchbuckets/oahu-villas-beverly-hills-california-3/




http://www.luxpads.com/img.php?src=http://dx577khz83dc.cloudfront.net/5573/a9289728-c1ac-475c-99bd-dc54df4d1bd8.jpg&w=816&h=600&q=75&zc=2



http://www.luxpads.com/hawaii-vacation-rentals/




http://dx577khz83dc.cloudfront.net/5573/4731e9a7-1ce2-4ffb-a3e7-efd013e9d784.jpg



http://dx577khz83dc.cloudfront.net/5573/61e19abe-4497-4e8f-96ba-93dbcdaaad31.jpg



http://dx577khz83dc.cloudfront.net/5573/8e9fd872-6a32-4873-88b0-b64e270ed588.jpg



**You Have Repeatedly Violated Mr. Tylor's Rights Under U.S. Copyright Law**

It is unquestionable that you have infringed upon our client's copyrights by using the aforementioned images on your website as part of your commercial advertising efforts.

Under United States Copyright Law, the copyright owner of an image has the exclusive rights to reproduce, distribute, display or prepare derivative works based upon the image. 17 USC §§106 & 501. Any reproduction, distribution, or display of a copyrighted work without authorization from the copyright holder constitutes infringement. This is a strict liability offense: you are responsible for any infringing act on your web pages regardless of your intent. **Removal of the infringed works does not relieve you from liability for damages arising from your past infringements.**

**Damages Arising From Your Repeated Copyright Infringements**

***Actual Damages and Lux Group's Profits.*** In the event that a copyright owner's rights are infringed upon, a copyright owner is entitled to recover actual damages and profits earned by Lux Group from the infringement *regardless* of whether the infringement was intentional or willful. 17 U.S.C.A. § 504(c)(1).

Here, Lux Group's use of the image to advertise and promote itself may allow our client to recover all profits generated from or related to BFA's online advertising campaign. *See, e.g., Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004)(copyright owner need only show gross revenue earned by infringer related to the infringement). The burden would then shift to BFA to establish that revenue related to the online campaign was not attributable to the copyrighted work. *Russell v. Price*, 612 F.2d 1123, 1130-1 (9th Cir. 1979)(well-established that "[d]efendants are obliged to prove their deductible expenses…or else 'the gross figure is left to stand as the profit factor").

***Statutory Damages.*** Additionally, since as noted above, at the time of your infringement, the images were registered with the United States Copyright Office, Mr. Tylor, may elect to obtain statutory damages of up to **$30,000.00** for each infringement or up to **$150,000.00** for each willful infringement. Attorney's fees may also be awarded.

"Willfulness" within the meaning of the Copyright act means that the infringer either had actual knowledge that it was infringing the plaintiff's copyright or else acted in reckless disregard of the high probability that it was infringing the plaintiff's copyright. *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.,* 807 F.2d 1110, 1115, 1 U.S.P.Q.2d (BNA) 1261, 1265 (2d Cir. 1986). This knowledge may be actual or constructive. *Ibid.* Moreover, **willfulness may be established for statutory damages purposes by showing that the alleged infringers continued to use the copyrighted works after receiving a cease-and-desist letter from those works' owners.** *Flowserve Corp. v. Hallmark Pump Co., Inc.* (S.D. Tex. 2011), 98 U.S.P.Q.2d 1979, 1986, 1987-88, 2011 WL 1527951.

**Damages Arising From Your Violation of the Digital Millennium Copyright Act**

Besides blatantly violating copyright laws in your infringing uses of the images in question, it appears that you may have violated Section 1202 of the Digital Millennium Copyright Act ("DMCA") by removing copyright management information from the above images that were used on your webpages. 17 U.S.C.A. § 1202.

The DMCA provides that no person shall, without the authority of the copyright owner or the law "intentionally remove or alter any copyright management information… or distribute… copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law." 17 U.S.C.A. § 1202.

The DMCA provides that for minimum statutory damages in sum of not less than $2,500 or more than $25,000.00 as to each violation. Copyright management information includes the name of the author of the work. The photographer's copyright management information is included with his images where those images legitimately appear, but it has been edited or omitted from the images used on your webpages. Based upon the image used on your website this would subject you to a minimum of $2500.00 for the DMCA violations, in addition to attorney's fees and costs, and additional damages for the copyright infringements.

**Demand For Preservation of All Evidence**
**Related to Website Usage And Electronic Data Related To The Copyrighted Images**

Now that you are on notice of the claims against Lux Group, you are under an obligation to preserve **all** evidence (including all electronic data) related to such claims and damages or face sanctions in litigation for spoliation of such evidence. "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.* 264 F.R.D. 517, 523-24 (N.D. Cal. 2009); *see also Unigard Sec. Ins. Co. v. Lakewood Engineering & Man. Corp.*, 982 F.2d at 365, 369 (9th Cir 1992) (upholding the district court's exclusion of plaintiff's expert testimony based on evidence plaintiff destroyed two years before filing suit).

Spoliation need not be in bad faith to warrant imposition of sanctions. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993). Such sanctions may include a jury instruction that it may draw an adverse inference from the spoliation, exclude witness testimony and evidence, or other more severe litigation sanctions. *Id.*; *Alexander v. Nat'l Farmers Org.,* 687 F.2d 1173 (8th Cir.1982).

**Demand for Insurance Policy Information**

Please be advised that the claims made against Lux Group may fall within "advertising injury" coverage provided as part of a typical Commercial General Liability ("CGL") policy. *See, J.I.P., Inc. v. Reliance Ins. Co.*, 165 F.3d 35 (9th Cir. 1998). Please confirm that you have tendered this matter to your CGL insurer and provide us the policy number, carrier, and claim number as. Please be advised that your delay of tendering this claim to your insurer may result in a denial of coverage for the substantial damages we may seek to recover.

**Our Client's Demands**

For settlement purposes and in order to avoid the delay of litigation, my client will settle his copyright infringement and DMCA claims against Lux Group for the known infringements by issuing a release for the infringing past uses on your web pages shown above only, for a payment of **$28,200.00** paid in full before close of business on June 11, 2015 Any further attorney's fees and costs that my client must incur in order to resolve this matter will be added to

the settlement demand. This settlement amount anticipates **immediate** removal of all uses of the images from the webpages along with no further uses of the copyrighted image. Any other uses of the image or any other image must be subject to further action and are not released herein.

Accordingly, our client demands that you:

**(1) Immediately cease and desist from all unlicensed uses of our client's above images;**

**(2) Preserve all electronic evidence of your source of our client's images the date that they were uploaded to your webpage along with viewership/"hits" data, and revenue related to your website and use of such images;**

**(3) Confirm tender of this claim to your insurer and provide to us your insurance policy number and carrier name; and**

**(4) Remit the full $28,200.00 to my office by June 11, 2015.**
**(*Payable to: Woolf Gafni & Cirlin LLP Client Trust Account*)**

Should you choose not to cooperate with our client's demands and willingness to resolve this matter short of litigation, our client reserves his right to seek all available remedies, as well as attorney's fees and costs for your infringement. You should consult with counsel experienced in copyright litigation concerning this matter.

This is a settlement offer subject to Rule 408 of the Federal Rules of Evidence. Please contact our office if you have any questions.

Very Truly Yours,
WOOLF GAFNI & CIRLIN LLP.

Adam I. Gafni, Esq.